**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FEB 1 3 2013

STEPHEN C. WILLIAMS
U.S. MAGISTRATE JUDGE
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE MATTER OF THE SEARCH OF )
1. Black Apple I-Phone model A1332 )
   IC:579C-E23808 contained in a red )
   and black Griffin protective case )
2. A SATA 120GB Western Digital Hard )
   Drive Model# WD1200BEVS Serial# )
   WD-WXEX07E73286 with the )
   markings of "Product of Thailand" )
3. An IDE 20GB Hitachi Hard Drive )
   Model#IC25N020ATCS04-0 )
   Serial#CSH204DMDDVNSF )
4. Alienware Laptop Reg Model#P18G )
   Service tag #DVDG4R1 M14X laptop )
   containing unknown size make/model )
   hard drive and/or internal memory )
   with the markings of "Made in China" )
   and an embroidered name plate )
   displaying the words "Built for Chris )
   Horton (NINJA)" )

CASE NUMBER 13-mj- 7011-SCW

**FILED UNDER SEAL**

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

I, David B. Vucich, being duly sworn and deposed state:

I am a Special Federal Officer with the Federal Bureau of Investigation's (FBI) Metro-East Cyber Crime and Analysis Task Force, and I have reason to believe that stored within the following:

1. Black Apple I-Phone model A1332 IC:579C-E23808 contained in a red and black Griffin protective case
2. A SATA 120GB Western Digital Hard Drive Model# WD1200BEVS Serial# WD-WXEX07E73286 with the markings of "Product of Thailand"
3. An IDE 20GB Hitachi Hard Drive Model#IC25N020ATCS04-0 Serial#CSH204DMDDVNSF
4. Alienware Laptop Reg Model#P18G Service tag #DVDG4R1 M14X laptop containing unknown size make/model hard drive and/or internal memory with the markings of "Made in China" and an embroidered name plate displaying the words "Built for Chris Horton (NINJA)"

which are all within the Southern District of Illinois, and in the possession of your affiant, is now

concealing certain electronic data files and digital information of evidentiary value being:

**SEE ATTACHED LIST, ENTITLED "ATTACHMENT A"**

which constitutes evidence of the commission of a criminal offense or the fruits of crime, or which is designed or intended for use or which is or has been used as the means of committing an offense in violation of 18 U.S.C. §§ 2251 and 2252, Production of Child Pornography and/or Receipt and Possession of Child Pornography. The facts to support the issuance of this Search Warrant are as follows:

## AFFIDAVIT

I, David B. Vucich, being first duly sworn state:

1.  I am a Detective Sgt. with the Madison County Illinois Sheriff's Office. I have been employed by said Department since November 1997. I am currently assigned to the Federal Bureau of Investigation's (FBI) Metro-East Cyber Crime & Analysis Task Force as a Special Federal Officer (SFO), and have been so assigned since approximately 2005. MCCA is comprised of law enforcement personnel from approximately 15 different local, state, and federal agencies. I work with other members of MCCA at the FBI's office in Fairview Heights, Illinois. During this time, I have been trained to investigate and conduct investigations of various types of crime, including computer crimes. The statements contained in this affidavit are either based upon my investigation, information provided by other investigators, other personnel specially trained in the seizure and analysis of computers and electronic media, and on my experience and training as a Deputy with the Madison County Sheriff's Office and an SFO with the FBI. As part of my regular duties, I have investigated matters involving the online exploitation of children, particularly regarding the possession, receipt, and transmission of images of child pornography. I have gained expertise in the conduct of such investigations through training seminars, classes, and everyday work related to conducting these types of investigations. I regularly conduct forensic computer and cell phone exams and I have and continue to receive training in the search and recovery of cell phones, computers, peripherals, computer data, imaging computer hard drives, and interpreting on-line computer activity from data logs and Internet Service Providers. I have had involvement, either directly or indirectly, in over 150 online child exploitation investigations and have been the lead case agent in at least 50 of them. I also participate in the execution of federal search warrants.

2. This affidavit is submitted to establish probable cause that the evidentiary items listed herein were used to commit violations of 18 U.S.C. §§ 2251 and 2252, Production of Child Pornography and/or Receipt and Possession of Child Pornography, among other offenses. The electronic storage devices described herein were seized from Christopher Horton after admissions were made by Horton that he had engaged in sexual acts with three minors and had recorded the acts with his iPhone and transferred the recordings to his Alienware laptop computer. The above-listed items are within the Southern District of Illinois and in possession of your affiant.

**Definitions**

3. The following is a non-exhaustive list of definitions that applies to this Affidavit and Attachment A to this Affidavit:

4. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors, but that are not, in and of themselves, obscene or illegal. In contrast to "child pornography," this material does not necessarily depict minors in sexually explicit poses or positions. Some of the more common types of child erotica include photographs that are not sexually explicit, drawings, sketches, fantasy writing, and diaries.

5. "Child Pornography" includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

6. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

7. "Minor" means any person under the age of eighteen years. See 18 U.S.C. § 2256(1).

3

8.  "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. See 18 U.S.C. § 2256(2).

9.  "Computer" as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1), as an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

10. "Computer hardware" as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

11. "Computer software" as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

12. "Computer-related documentation" as used herein, consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

13. "Computer passwords and data security devices" as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to unlock particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates test keys or hot keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or booby-trap protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

14. "Internet Service Providers" or "ISPs" are commercial organizations, which provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer various means by which to access the Internet including telephone based dial-up, broadband based access via a digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth that the connection supports. Many ISPs assign each subscriber an account name such as a user name or screen name, an e-mail address, and an e-mail mailbox and the subscriber typically creates a password for the account. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and password. "ISP Records" are records maintained by ISPs pertaining to their subscribers (regardless of whether those subscribers are individuals or entities). These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers, and other information, which may be stored both in computer data format and in written or

printed record format. ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use. This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files.

15. "Internet Protocol Address" or "IP Address" refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

16. The terms "records", "documents", and "materials", as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

### Computers and Cell Phones Search Techniques

17. The search procedure of electronic data contained in computer hardware, computer software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

> a. Examination of all of the data contained in such computer hardware, computer software, and/or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;

b. Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c. Surveying various file directories and the individual files they contain;

d. Opening files in order to determine their contents;

e. Scanning storage areas;

f. Performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment A; and/or

g. Performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment A.

18. Your Affiant further requests judicial authority to transport/ship these items to any appropriate laboratory setting outside of the Southern District of Illinois, in order to complete a full forensic examination, if necessary.

### Details of this Investigation

19. On February 11, 2013, I, Detective Sgt. David Vucich DSN 98 of the Madison County Illinois Sheriff's Office assigned to the FBI Child Exploitation Unit in Fairview Heights Illinois received information from Sgt. Adam Kavanaugh from the St. Louis County Police Special investigations unit. Specifically, Kavanaugh was provided information from another undisclosed St. Louis County officer about possible child exploitation occurring in Illinois.

20. Kavanaugh elaborated advising that he spoke with a subject by the name of Austin Sprague, later identified as Timothy Austin Sprague, age 36. Kavanaugh stated that Sprague informed

7

him that his girlfriend confided in him that her twenty year old son had child pornography on his cellular telephone and the child pornography was that of a victim known to her and the victim was around ten years of age. Kavanaugh advised that the mother who discovered the child pornography on the phone resides in the Highland, Illinois, area and there may also be a connection to the Belleville, Illinois, region.

21. Kavanaugh provided me with the name of Christopher as being the possible suspect and stated that he is a martial arts instructor at an establishment by the name of ▮▮▮▮ and is twenty years old. He identified the mother as Christie Hampton. Kavanaugh provided a phone number for further follow up investigation to contact Sprague.

22. I contacted Sprague's phone and left a message directing him to call back. Internet and computer inquiries on Hampton indicated that subjects associated to her household at 1408 Ash St. in Highland, Illinois, was a Christopher Horton who is twenty years old.

23. Hours later, Sprague returned my telephone call and I spoke with him about what he recalled during his conversation with Hampton. Sprague explained that he spoke with Sgt. Kavanaugh last night around 9:00 p.m. or 10:00 p.m. about a matter regarding a conversation he had with his girlfriend who he identified as Christie Hampton and provided with the a similar account as follows. Sprague said that he had dinner with Hampton on Friday night, February 8, 2013, and they have been dating for a few months. During the dinner conversation, she appeared to be extremely emotionally upset about a matter. Upon Sprague inquiring several times into her mood, she disclosed that someone close to her has an attraction to young boys. She further elaborated stating that it is someone that he knows as well. Using deductive reasoning and process of elimination, he asked if it was her son Christopher and she responded in the affirmative.

24. Hampton provided further information advising that her son has child pornography of a young ten year old child on his cellular telephone which she discovered. According to Sprague, Hampton knows the child on the phone because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮. Sprague could not elaborate on much of the details of what the content depicted or displayed but

8

said it was some kind of video and show a little boys "stuff". Sprague confronted her by saying something to the effect of "Please tell me that he hasn't touched any boys." At that point he described her as bowing her head in shame which he believed to be an affirmative gesture to the question. Sprague was uncertain where the video was made. He said that Christopher has homosexual tendencies and has a younger sister within the household. Sprague was visibly upset during the conversation with me and was crying. He further advised that Christopher has access to children and works as a martial arts instructor in the Belleville, Illinois, area.

25. Acting on the urgency of this information, I contacted Detective Scott Athmer of the Highland, Illinois, Police Department for assistance. We proceeded to ▮▮▮▮▮▮ in an attempt to locate witnesses and/or the alleged suspect. Upon arrival, contact was made with Christie Hampton. She indicated that her son, Christopher Horton, was not presently home but agreed to leave the residence and speak with investigators at the Highland Police Department.

26. During a video recorded interview, Christie Hampton provided additional details about the investigation as follows. Hampton said that approximately two weeks ago on February 2, 2013, she was using her son's cellular telephone which was later identified as a black Apple I-Phone model A1332 IC:579C-E23808 contained in a red and black Griffin protective case and it displayed the markings made in China on the back. During this time, she discovered a video. Upon viewing it she discovered her son, Christopher Horton, engaged in a sexual act with a 10 year old minor male who she later identified by name. She described the act of Christopher performing oral sex on the minor and stated that she knows the minor because he has recently been at her residence. She stated that Christopher provides martial art lessons to the minor in Bellville, Illinois, at the ▮▮▮▮▮▮ and at her residence. She was uncertain where the video took place. She confronted Christopher about it and he responded by placing his hands behind in back in a motion indicative to him going to jail.

27. Christie Hampton stated she asked him to delete the videos. She said Horton was initially resistant to delete them but he ultimately did. She said that he deleted the images on Saturday, February 9,

9

2013. He also told her that there were two other boys upon whom he performed similar acts but she did not have much further information on this. She indicated that he does possess other digital media within the household. She indicated that he possesses a laptop computer and she has observed that his I-Phone was previously plugged into this device.

28.     Based on my prior training, knowledge and experience I know that I-Phones can transfer information once plugged into a computer device either manually or via a "sync" method which virtually creates a backup of many of the cellular telephone's contents to include, videos, images, music, etc.

29.     Christie Hampton further advised that another subject who resides at the residence was also aware of the admissions made by Horton. Hampton also advised that her son may be suicidal as well.

30.     Hampton consented to a search of her residence and indicated she commonly has free access throughout the household and into Christopher's bedroom. We transported her back to the residence.

31.     A search of the basement area of the residence was conducted and we located a SATA 120GB Western Digital Hard Drive Model# WD1200BEVS Serial# WD-WXEX07E73286. It was located on top of the heater in plain view next to a notepad. It displayed the markings of "Product of Thailand." We also located an IDE 20GB Hitachi Hard Drive Model#IC25N020ATCS04-0 Serial#CSH204DMDDVNSF. It was found on top of the bedroom dresser and displayed the markings of "Made in Thailand."

32.     Also presently living in the household in the basement with Horton was Cameron Brogna (age 19) who agreed to speak with us regarding admissions and information provided by Horton. Brogna advised that Horton disclosed to him of a sexual act with a boy ▇▇▇▇▇▇ who he knows from frequenting the residence recently and Horton providing martial art lessons. He said that Horton told him that ▇▇ performed oral sex on him when they were at a park in Highland Illinois. He advised that he had a couple conversations with Horton about child pornography and Horton possessing it on the phone. Brogna said that Horton has an Alienware laptop computer but it is not presently within the basement

10

bedroom where they both sleep and stated that Horton must have it with him at martial arts. He said that the aforementioned 20GB IDE hard drive belongs to Horton and the 120GB hard drive was taken out of a laptop upstairs a few weeks ago and replaced with a different one.

33. During this time, I requested the assistance of Belleville Police Department Detective Karl Kraft to locate and take Horton into custody for the protection of any children he might in contact with and to prevent the destruction of evidence.

34. I was advised by Detective Kraft that he took Horton into custody at the martial arts studio and currently had possession of Horton's I-Phone. I requested his assistance with locating the laptop. Det. Kraft, with the assistance of another employee of the martial arts studio, located the laptop computer. The laptop was later described as being in a black bag with miscellaneous paperwork. It is a black Alienware Laptop Reg Model#P18G Service tag #DVDG4R1 M14X laptop containing unknown size make/model hard drive and/or internal memory. It displayed the markings of made in China on the back. It also contains an embroidered name plate displaying the words "Built for Chris Horton (NINJA)".

35. Detective Athmer and I proceeded to Belleville Police Department to interview the suspect, Christopher Horton. He consented to an audio and video recorded interview and was advised of his Miranda Warnings. Initially, he denied knowing what we wanted to speak with him about. As the interview progressed, he gradually admitted more involvement and admitted to viewing anime child pornography and would provide his definition of what child pornography meant. Horton's described child pornography as anyone under the age of eighteen that was nude.

36. As the interview continued, Horton eventually admitted to committing sexual acts upon students he knew from his martial arts studio at ▬▬▬▬. Specifically, he admitted to engaging in oral sex acts with three different boys of the approximate ages of six, eight, and ten. He stated that he recorded these acts via video on his I-Phone which we had in our possession. He corroborated his mother's account that the images were deleted at one point but he plugged the phone into his Alienware laptop and they were transferred to it. He said the sex acts with the three different boys have occurred

11

over the last year. He stated he offended against one of the victims was while he was in the State of Texas in San Antonio during a martial arts related event. The other two victims reside nearby in the Belleville, Illinois area.

37.  Horton provided names of all three of the victims. He stated that he engaged in the sexual acts with two of the victims while at the ▆▆▆▆▆ martial arts studio by either performing oral sex on them or receiving oral sex from the victims. Horton also said that he also committed sexual acts with one of the victims both at his residence in Highland, Illinois, and at a park in Highland at Silver Lake.

38.  Horton said that the videos should still be on his I-Phone and the computer because he copied them back after deleting them. He described his actions of wanting to keep them as a trophy-type collection and admitted to being sexually aroused by them.

39.  The interview ended and Horton was transported to the Madison County Jail in Edwardsville, Illinois. While en route, Horton disclosed that he further solicited a nude picture from one the victims of the victim's penis which the victim sent. He also said that one of the videos may portray him in an act of sexual penetration but it was not actually sexual penetration.

40.  On February 12, 2013, two of the identified victims who reside in Belleville were interviewed at the St. Clair County Child Advocacy Center. Neither victim disclosed the sexual acts described by Horton.

### Conclusion

Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation and I have set forth the facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2251 and 2252 are located within the presently held evidence as described above.

Based on the foregoing information provided, your affiant believes there is probable cause to believe that 18 U.S.C. §§ 2251 and 2252 which, among other things, make it a federal crime for any

person to knowingly produce, possess, receive or distribute child pornography and/or entice a minor, has been violated and that there is evidence, fruits and instrumentalities of these offenses located within the items described herein.

Additionally, your affiant requests that this search warrant affidavit be sealed because this investigation is still on-going.

**FURTHER AFFIANT SAYETH NAUGHT.**

SFO ~David~ B. Vucich
Special Federal Officer
FBI Metro-East Cyber Crime and
Analysis Task Force

Ali Summers
Assistant United States Attorney

State of Illinois  )
                     ) SS.
County of St. Clair  )

Sworn to before me and subscribed in my presence on this 13TH day of February, 2013, at East St. Louis, Illinois.

STEPHEN C. WILLIAMS
United States Magistrate Judge

## ATTACHMENT A

(a)     All visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, and any mechanism used for the receipt or storage of the same, including, but not limited to, any computer, computer system and related peripherals including data processing devices; internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, routers, computer compact disks, CD-ROMS, DVD, and other memory storage devices; peripheral input/output devices (including but not limited to keyboards, printer, video display monitors, scanners, digital cameras, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware.

(b)     Computer software, including, but not limited to, programs to run operating systems, applications, utilities, compilers, interpreters, video, web browsers, P2P programs, Fserves programs, and communications programs. Any and all computer passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code.

(c)     Any and all documents, records, e-mails, and internet history (in documentary or electronic form) pertaining to the possession, receipt or distribution of child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, or pertaining to an interest in child pornography.

(d)     Electronic chat room and mail messages, notes, listings, and records relating to other individuals or entities involved in the production, distribution, or receipt of materials that depict or promote the sexual exploitation of children.

(e)     Visual depictions in whatever form created, stored, or printed which depict children under the age of 18 years engaged in sexually explicit conduct.

(f)     Any and all records, documents, invoices, notes and materials that pertain to ISP subscriber account billing statements, cable television bills, credit and debit card statements, bank statements, checks, money orders, telephone bills, and utility bills, and other documents which reflect the identity of the occupant(s) of the residence, as well as any and all records relating to the ownership or use of computer equipment found in the residence.

(g) All of the foregoing items of evidence in whatever form and by whatever means such items may have been created or stored, including any handmade form, any photographic form, any mechanical form, or any electrical, electronic, or magnetic form, such as any information on an electronic or magnetic storage device like a floppy diskette, hard disk, backup tape, CD-Rom, video-tape, DVD, optical disc, electronic dialer, electronic notebook, as well as printout or readouts from any magnetic storage device.